UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

VICTOR CHACON,
    Plaintiff,

    -against-

ECHO BAY MARINA, INC.
    Defendant

3:02CV1016 (CFD)

February 24, 2004

---

## AFFIDAVIT

Victor Chacon, being duly sworn; deposes and says:

1. I am the plaintiff in the above-captioned action and I make this affidavit for the purpose of opposing the defendant's motion for summary judgment which, if granted, would dismiss my case.

2. I am over the age of 18 and I make this affidavit of my own free will and the statements in it are true and correct, under the penalties of perjury.

3. On June 25, 2000, I was invited to the Echo Bay Marina (hereinafter Marina) by Mark Voeltz in order to go jet skiing with him, his family, and my friends Jessica and Mike D'Antona. I was also accompanied by my fiancée (now my wife) Mandy Zelimbo. I understood that Mark Voeltz was a member of the Marina on that date.

4. All of us traveled from our homes in Westchester County, NY to the Marina, which I now know to be located in Brookfield, CT. I believe that Mark Voeltz used his truck to tow his boat to the premises.

5. I towed my friend Mike D'Antona's jet ski behind my vehicle and we followed Mr. Voeltz in the trip from Westchester County to the Marina.

6. Upon arriving at the Marina, I parked my truck behind Mark's truck and Mark and Mike went into a building at the Marina which sells or rents boating items. I did not go into the store although I could have if I had wanted to purchase anything.

7. When he returned from the store, I believe that Mark Voeltz told me to put the jet ski into the water because he would then launch his boat after I was done launching the jet ski.

8. I drove my vehicle and the trailer over to the boat ramp and proceeded to back the trailer into the water so that I could launch the jet ski.

9. At no time did anyone from the Marina advise me not to use the launching ramp; no one from the Marina told me I had to be a member to use the ramp; and I saw no signs, warnings or other indications that the ramp was not supposed to be used. I was launching the jet ski at the direction of Marina member Mark Voeltz.

10 After I put the jet ski into the water, it floated off of the trailer and I walked it over to a dock next to the launching area. Again, no one from the Marina told me not to use the dock; no one told me to exit the area and I saw no signs, warnings, or other indications that I should not use the dock.

11. After I cleated the rope from the jet ski to the dock, I climbed up onto the dock. I then noticed a ramp which extended from the dock to the shore

12. As I was walking down the ramp, I slipped and fell because a portion of the dock was submerged and I believe that the submerged portion had some type of marine growth on it, possibly algae, which was very slippery.

13. There were no signs, warnings, or limitations of use for the ramp posted anywhere that I could see while I was on the dock

14. I can't state for certain that I stepped on the submerged portion of the ramp – I do know, however, that I slipped on the first step I took on the ramp.

15. There was no anti-skid material on any portion of the ramp, either on the upper portion or the submerged portion.

16. I was using the ramp as it was intended to be used at the time I fell; that is, I was walking from the dock to the shore to move my truck out of the way from the boat launching ramp so that Mark Voeltz could launch his boat.

17. I understand that the defendant has argued in its motion to dismiss my case that I did not ask permission to use the ramp. I had never been to the defendant Marina's premises before and no one ever indicated to me that any such permission was necessary to use the launching ramp or docks. In fact, I understand that no one had indicated to Marina member Mark Voeltz that any such permission was required and that he had used the ramp on the weekends previously to launch his boat. I also understand further that Mike D'Antona had launched his jet ski at the Marina on the weekend.

18. As a result of slipping on the defendant's ramp, I sustained a serious fracture of my left ankle, which has required 2 surgeries. My ankle's function has been impaired since 6/25/2000 and I understand that I have suffered a permanent injury to my ankle as a result of slipping and falling on the ramp at the Marina's premises

Dated: February 24, 2004
Larchmont, New York

                                                  Victor Chacon

STATE OF              )
                           ) ss:
COUNTY OF           )

     On this day of _____, 2004 before me personally appeared **Victor Chacon** to me known to be the person described herein, and who executed the foregoing affidavit, and acknowledged that he executed the same as his free act and deed.

                                                  Notary Public