(PDF) 

## Appellate Court of Connecticut.
Romeo SEVIGNY
v.
DIBBLE HOLLOW CONDOMINIUM ASSOCIATION, INC., et al.
No. 21897.
Argued Nov. 22, 2002.
Decided April 22, 2003.

Condominium unit owner, who slipped and fell on ice in the driveway of his condominium unit, brought negligence action against condominium association, a nonstock corporation, management company, and snow removal company. The Superior Court, Judicial District of Hartford, Bryant, J., entered judgment on jury verdict for association, management company, and snow removal company, and owner appealed. The Appellate Court, Flynn, J., held that: (1) trial court improperly left issue of duty to determination of jury by instructing jury to review contracts of condominium association, maintenance company, and snow removal company and to determine what legal duties each of them owed to condominium unit owner, and this instruction was improper; (2) as matter of apparent first impression, relationship between condominium unit owner and condominium association was consistent with traditional landlord-tenant relationship, and thus, trial court should have given instruction on theory of common-law negligence; and (3) because trial court failed to properly charge jury, jury was not presented with case in such a way that injustice was not done to either party, and thus, new trial was warranted.
Reversed and remanded.

West Headnotes

[1] KeyCite Notes

⇔388 Trial
  ⇔388VII Instructions to Jury
    ⇔388VII(G) Construction and Operation
      ⇔388k295 Construction and Effect of Charge as a Whole
        ⇔388k295(1) k. In General. Most Cited Cases

In reviewing claims of instructional error, instructions must be read as a whole and are not to be judged in artificial isolation from the overall charge.

[2] KeyCite Notes

⇔388 Trial
  ⇔388VII Instructions to Jury
    ⇔388VII(G) Construction and Operation
      ⇔388k295 Construction and Effect of Charge as a Whole
        ⇔388k295(1) k. In General. Most Cited Cases

When reviewing claims of instructional error, the whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict.

[3] KeyCite Notes

Andrew W. Bray, Hartford, for the appellee (named defendant).
Scott P. Birrell, Wallingford, for the appellee (defendant Thibodeau Management Services, Inc.).
Geoffrey Naab, Manchester, for the appellee (defendant Theodore Vancour).

DRANGINIS, FLYNN and BISHOP, Js.

FLYNN, J.
The plaintiff, Romeo Sevigny, appeals from the judgment of the trial court, rendered after a jury trial on his negligence complaint, in favor of the defendants, Dibble Hollow Condominium Association, Inc., a nonstock corporation (Dibble Hollow), Thibodeau Management Services, Inc. (Thibodeau), and Theodore Vancour, doing business as Ted's Lawn Service (Vancour). *308 11 [FN1]] On appeal, the plaintiff claims that the court improperly (1) charged the jury on negligence and (2) ruled on two evidentiary issues. We conclude that the charge was improper and, therefore, reverse the judgment of the trial court and remand the case for a new trial. We do not reach the evidentiary claims.

> FN1. The defendants Dibble Hollow and Thibodeau were, at least initially, represented by the same counsel. Counsel on December 28, 1999, filed an answer to the plaintiff's complaint, addressing both the first count, brought against Dibble Hollow, and the second count, brought against Thibodeau. The answer, as related to the third count, brought against Vancour, stated that "[t]hese defendants do not respond to Count Three as it is not directed towards them." The answer did not contain a caption indicating that it was filed on behalf of both defendants, and it was signed only on behalf of one defendant, Thibodeau. We treat the answer, however, as apparently both the parties and the court did, as an answer on behalf of both Dibble Hollow and Thibodeau.

The jury reasonably could have found the following facts. The plaintiff owns a condominium unit at the Dibble Hollow Condominiums. The defendant Dibble Hollow is a Connecticut nonstock corporation, of which only the unit owners are the **848 members. Dibble Hollow is responsible for the maintenance of the driveways at the condominium complex. [FN2] Maintenance includes *309 snow removal, sanding and salting of the driveways, which the individual owners, absolutely, are not obligated to undertake and, in fact, would be discouraged from so doing by the president of Dibble Hollow.

> FN2. We note that the plaintiff pleaded, and the defendant Dibble Hollow specifically denied in its answer, that Dibble Hollow "owned, operated, maintained, possessed and/or controlled the common areas...."

> Nevertheless, article I, § 1.5, of Dibble Hollow's declaration to its public offering statement states that common elements are "[a]ll portions of the [c]ommon [i]nterest [c]ommunity other than the [u]nits." Article V, § (f), provides that designated parking places are considered a limited common element, the fee ownership of which is vested in all of the unit owners. Article I, § 1.17, states in relevant part that limited common areas are "[a] portion of the [c]ommon [e]lements allocated by the [public offering statement] ... for the exclusive use of one or more but fewer than all of the [u]nits...." Article VI, §§ 6.1 and 6.3, state that Dibble Hollow is responsible for maintaining, repairing and replacing all of the common elements, with the exception of some specific portions of the limited common elements. Designated parking places are not listed among those specifically excluded limited common elements.

> We also note that, although designated parking places are discussed in the public offering statement and considered limited common elements, the status of driveways is

not specifically mentioned. Nevertheless, driveways or designated parking places are not excluded, by virtue of article VI, from the common elements or limited common element for which

Dibble Hollow is responsible.

The defendant Thibodeau is the managing agent in control of the operation, management and repair of the premises and employs Steven Cabaniss to manage the Dibble Hollow property as well as several other properties. In 1996, Dibble Hollow began to contract out its snow removal and landscaping needs to Ted Vancour, doing business as CNT Landscaping, but, in September, 1997, CNT went out of business, and Ted Vancour, doing business as Ted's Lawn Service, assumed the contract with Dibble Hollow. Ted Vancour from Ted's Lawn Service is the father of the former contractor, eponymously named Ted Vancour from CNT Landscaping. The contract between Dibble Hollow and Vancour required Vancour to provide snow removal and other services to the premises. One of Vancour's responsibilities was to sand all driveways when icy conditions existed.
On December 28, 1997, the plaintiff slipped and fell on ice in the driveway of his condominium unit while exiting his daughter's minivan. From approximately noon until 9 p.m. the previous day, mist and snow had fallen, accumulating approximately one-half of an inch, which remained on the ground the day of his fall. The plaintiff's daughter testified that when she and her two year old daughter arrived at her parents' home to accompany them to a holiday party, she noticed that their driveway was icy and had not been plowed. She instructed them to be careful because the driveway was slippery. When they returned from the party, sometime after 3 p.m., the driveway, which was on an incline, *310 remained covered with ice and still had not been plowed, salted or sanded. The plaintiff, after putting the minivan in park, slipped and fell to the ground as he stepped out of the driver's door, and the minivan began to slide backward down the driveway. His daughter jumped into the front seat and tried to stop the mini-van from sliding backward but, despite repeatedly pumping the brakes, it continued to slide until it reached the end of the short driveway.
The plaintiff had a history of back problems and prior to the fall had undergone **849 three spinal fusions. Because of his back problems, he has been required to wear a leg brace for approximately ten years. As a result of the fall, the plaintiff sustained an additional injury to his lumbar spine and was required to undergo two additional back surgeries.
The plaintiff alleged that the injuries resulting from the accident arose from the negligence of each of the three defendants. Each defendant filed the special defense of contributory negligence. [FN3] Dibble Hollow also filed a cross claim against the defendant Vancour, claiming that, if the plaintiff had been injured in the manner alleged, his injuries were due solely to Vancour's negligence. The case was tried to a jury, which returned a verdict for all defendants, finding that the plaintiff, *311 himself, was more than 50 percent causally negligent. The plaintiff filed a motion to set aside the verdict and for a new trial, [FN4] which the court denied, and judgment was rendered on the jury's verdict. This appeal followed.

> FN3. Dibble Hollow and Thibodeau alleged that the defendant was contributorily negligent in that he: "a. Failed to make [reasonable] use of his own senses and faculties; b. Failed to watch where he was stepping; c. Failed to step over, away from or around whatever defective or dangerous condition he claims existed; d. He failed to use that degree of care that an ordinary prudent person would have exercised for this own safety while using the premises under the circumstances and conditions then present."

> Vancour alleged that the plaintiff was contributorily negligent in that "a. He failed to watch where he was stepping; b. He knew, or in the exercise of due care should have known, that the driveway was slippery, but nevertheless took no precautions, or inadequate precautions, to prevent slipping when he got out of the car; c. He failed to exercise due care for his own safety in the circumstances."

FN4. Specifically, among the grounds for the motion to set aside the verdict and grant a new trial were the following: "1. That the trial court erred in failing to instruct the jury correctly on the duty of care each of

the defendants owed to the plaintiff. 2. That the trial court failed to correctly charge the jury that the defendant, [Dibble Hollow], owed the plaintiff a duty to maintain the area where he fell, to inspect the area where he fell and to take reasonable precautions to remove or otherwise maintain the driveway in a reasonably safe condition. 3. That the trial court failed to instruct the jury on the legal duties which flow as a result of the maintenance, operation, possession or control of the property in issue. 4. That the trial court failed to properly and correctly instruct the jury on the common law duties owed to the plaintiff by [Thibodeau]. 5. That the trial court failed to properly and correctly instruct the jury on the common law duties owed to the plaintiff by [Vancour]. 6. That the trial court failed to properly and correctly instruct the jury on the common law duties owed to the plaintiff by [Dibble Hollow]. 7. That the trial court failed to instruct the jury correctly and completely regarding the legal duties each of the defendants owed to the plaintiff based on contract submitted into evidence.... 8. The trial court failed to charge in accordance with plaintiff's Request to Charge...."

I

The plaintiff first claims that the court improperly instructed the jury on negligence. We agree.

[1] [2] [3] [4] [5] In reviewing claims of instructional error, "[j]ury instructions must be read as a whole and ... are not to be judged in artificial isolation from the overall charge.... The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict.... Our standard of review on this claim is whether it is reasonably probable that the jury was misled.... The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established *312 rules of **850 law.... [T]he trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict." (Citation omitted; internal quotation marks omitted.) Macy v. Lucas, 72 Conn.App. 142, 156, 804 A.2d 971, cert. denied, 262 Conn. 905, 906, 810 A.2d 272 (2002). "Pursuant to Practice Book § 16-20, a party may preserve appellate review of a written request to charge without taking an exception to the court's failure to charge as requested." Coville v. Liberty Mutual Ins. Co., 57 Conn.App. 275, 284, 748 A.2d 875, cert. granted on other grounds, 253 Conn. 919, 755 A.2d 213 (2000) (appeal withdrawn March 30, 2001); see also Scanlon v. Connecticut Light & Power Co., 258 Conn. 436, 445 n. 14, 782 A.2d 87 (2001) (providing written request covers the issue; party need not take exception on that point).

To apply this standard of review accurately, it is necessary that we examine the requested jury charge, the actual jury charge and the various objections to it raised by the plaintiff.

In this case, the plaintiff alleged one count of negligence against each defendant. The first count, against Dibble Hollow, is based on a common-law theory of negligence and alleges that Dibble Hollow was negligent is several enumerated ways. The second count, against Thibodeau, specifically alleges that Thibodeau was under contract with Dibble Hollow to operate and maintain the common areas of the premises and was also negligent in several enumerated ways. The third count, against Vancour, alleges that Vancour was responsible for maintaining the outside common areas of the premises and that he was negligent in several enumerated ways.

The plaintiff, in part, requested that the court charge the jury that "[a] duty can arise by common law or by *313 contract.... [Dibble Hollow] admits that it has the duty to maintain all driveways in the condominium complex, including that which leads to [the plaintiff's] unit. Because [Dibble Hollow], under the terms of its Public Offering Statement, and by its own admissions, has responsibility for the maintenance, repair and replacement of all driveways, [Dibble Hollow] is by

common law, in possession and control of all driveways, including that driveway which leads to [the plaintiff's] unit. By both operation of law and by the terms of the Public Offering [S]tatement, [Dibble Hollow] owed [the plaintiff] a duty to maintain the driveway which leads to his condominium unit in a reasonably safe condition."

The plaintiff also requested a charge that Dibble Hollow had the legal duty to exercise reasonable diligence in removing, sanding or salting dangerous accumulations of ice or snow within a reasonable time and that it had the legal duty to inspect the driveways to ensure that they were safe, and that the plaintiff had no responsibility to maintain the driveway himself and that he could rely on Dibble Hollow's duty to maintain the driveway. Additionally, the plaintiff requested a charge that these duties were nondelegable, and, if the other defendants were negligent, then, Dibble Hollow is responsible for that negligence despite its contracts with those defendants. The plaintiff also requested a charge as to his status as an invitee.

As to Vancour, the plaintiff requested a charge that any duty owed to him by Vancour resulted from the contract between Vancour and Dibble Hollow. He further requested that the specific duties of the contract be part of the charge: "The contract in issue required [Vancour] to '[s]and all driveways, parking areas, sidewalks and steps when icy conditions exist or at [the] property manager's request.' The contract also requires that '[a]ll walks must be kept free of ice.' The contract **851 further requires that all clean up operations such as *314 plowing, shoveling and sanding, be complete within four hours after the end of any storm."

As to Thibodeau, the plaintiff requested that the court charge that any legal duty owed him by Thibodeau arose out of the management agreement between Dibble Hollow and Thibodeau. Specifically, the plaintiff requested, in part, that the court charge that the terms of this agreement required Thibodeau to " '[i]nspect as necessary the common elements including the exterior portions of the condominium units.' " The plaintiff also requested a charge as to agency, in that Thibodeau performed as the agent of Dibble Hollow in connection with the services performed under the management agreement.

The court actually charged the jury, in part, that "each party has charged that the other party was negligent or failed to perform a duty in some way. What does it mean to be negligent? Negligence is a violation of a legal duty, which one person owes to another, to care for the safety of that person or a person's property." After stating what the plaintiff had alleged in his complaint, the court went on to discuss the duties owed by each of the defendants. "The [duty] which each of the defendants owes to the plaintiff is contained in the various contracts, which are included in the exhibits; again, which you will have with you in the deliberation room, and which have been referred to both during the testimony and in the closing arguments of counsel. Each defendant has a different contract and a different set of duties. Therefore, the duty owed by each defendant and the liability, if any, of each defendant, must be determined by you separately based upon the terms of the contracts under which their duty arises. That gets back to the reason why you have three separate verdict forms for the defendants and one for the plaintiff. You must consider the liability of each defendant separately."

*315 The court further charged that "[i]n this case, Dibble Hollow Condominium Association's duty arises under the Dibble Hollow offering statement, which, according to the testimony, each owner received at their real estate closing. The applicable sections of that document have been admitted into evidence, and ... it has been marked as exhibit forty-four. Please read these exhibits in their entirety. Don't single out any particular sections. The entire document is an exhibit, and you should review the entire exhibit."

As to Thibodeau, the court charged that "[t]he duties of the defendant, Thibodeau Management Company, arose out of the Dibble Hollow management agreement, which is admitted as exhibit seven. And finally, in the case of Ted's Lawn Service, his duties arose under the Dibble Hollow snow removal and land maintenance agreement, which is exhibit three. Again, you will have each of these exhibits with you in the jury deliberation room, and you should read them in order to determine exactly what you believe the duties of each of the defendants was so that you determine whether the defendant[s] performed their duty under the contract with reasonable care, which I will define in a moment.

"Before I define 'reasonable care,' it is important for me to add that the duties created, pursuant to the contracts, cannot be delegated. That means that even if a party enters into a contract with another person to perform all or a portion of their duty, that does not eliminate the contracting party's duty to do so. Even if a party to a contract enters into a contract with another party to

perform that service, he still is liable if that duty is not properly discharged by the party with whom he contracted to perform his duties."

The court then went on to charge the jury on reasonable care. During that section **852** of the charge, the court explained that "[a]ssuming that you find that [the plaintiff] *316* fell as he claimed, you must then decide whether he fell because of an unreasonable accumulation of ice or snow as a result of the negligence of any one or more of the defendants. The mere existence of ice or snow or both does not in and of itself establish negligence on the part of any defendant. The existence of ice and snow would only establish negligence if, in the exercise of reasonable care, a party with a duty to remove the ice or snow should have removed it on December 28, 1997. Accordingly, for each defendant, you must also determine whether such defendant had a duty to remove or cause to be removed any ice or snow under their respective contracts. And if you find that a particular defendant had such a duty, based upon the conditions as they existed throughout the day of December 28, 1997, you must then determine whether, in the exercise of reasonable care, such defendant having the duty to remove the ice or snow should have in fact removed the ice and/or snow." The court also charged the jury on legal cause, contributory negligence and damages. Following this charge, the plaintiff's counsel, for the record, stated the following exceptions: Failure to include the duty to inspect arising under the common law; failure to include the theory of "reliance on another acting properly"; failure to include the theory of agency; failure to include a charge on future medical expenses; and failure to instruct on the common-law theory of negligence. In summation, counsel stated that his "simple point is that there was no discussion of the common-law duties, and without more guidance as to such duties, respectfully, Your Honor, I don't think the jury has enough to understand such legal duties, and that's all I have to say." In response, the court went through each exception of the plaintiff and concluded that these additional charges were either unwarranted or redundant.

*317* Counsel for Thibodeau also took exception to the charge on duty of care, stating that "while it is the jury's province to decide ... if the duty of care was breached ... what the duty was under the contract ... is an issue of law that the court should decide...." Counsel went on to quote the specific portion of the charge to which he objected: "The specific charge [to which] we take exception ... reads, 'You will have each of these contracts with you in the jury deliberating room, and you should read them to determine exactly what you believe their duties were in determining whether a defendant performed its duties with reasonable care, which I will define for you in a moment.' " The court noted his exception.

[6] On appeal, the plaintiff argues, and we agree, that, in essence, the trial court told the jury to read the contracts and to decide what duties each of the defendants owed to the plaintiff. Although he specifically did not take an exception to the court's failure to define the duties of each defendant, the plaintiff did request that the duties be specified in his request to charge. As such, this claim was properly preserved. See Practice Book § 16-20; Scanlon v. Connecticut Light & Power Co., supra, 258 Conn. at 445 n. 14, 782 A.2d 87; Coville v. Liberty Mutual Ins. Co., supra, 57 Conn.App. at 284, 748 A.2d 875. Additionally, we concur with the plaintiff's argument that the court improperly omitted a charge on the common- law theory of negligence as alleged against Dibble Hollow. [FN5] We will analyze each of these claims in turn.

> FN5. In relation to the plaintiff's request to charge on a common-law theory of negligence against Dibble Hollow, the court refused to so charge, at least in part because of the lack of appellate authority on the issue, concluding that a unit owner does not fall under the traditional analysis of the duties owed by a land possessor to an invitee.

**\*\*853** A

[7] [8] [9] [10] "We first note that the determination of whether a duty exists between individuals is a question of law." *318* Jaworski v. Kiernan, 241 Conn. 399, 404, 696 A.2d 332 (1997). "The existence of a duty of care is an essential element of negligence.... A duty to use

care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." (Citation omitted; internal quotation marks omitted.) _Emerick v. Kuhn_, 52 Conn.App. 724, 755, 737 A.2d 456, cert. denied, 249 Conn. 929, 738 A.2d 653, cert. denied sub nom. _Emerick v. United Technologies Corp._, 528 U.S. 1005, 120 S.Ct. 500, 145 L.Ed.2d 386 (1999). "[T]he existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Internal quotation marks omitted.) _Hernandez v. Cirmo_, 67 Conn.App. 565, 568-69, 787 A.2d 657, cert. denied, 259 Conn. 931, 793 A.2d 1084 (2002).

General Statutes § 52-216 directs that "[t]he court shall decide all issues of law and all questions of law arising in the trial of any issue of fact; and, in committing the action to the jury, shall direct them to find accordingly. The court shall submit all questions of fact to the jury, with such observations on the evidence, for their information, as it thinks proper, without any direction as to how they shall find the facts. After the action has been committed to the jury, no pleas, arguments or evidence may be received before the verdict is returned into court and recorded." Additionally, our rules of practice further instruct that "[t]he judicial authority shall decide all issues of law and all questions of law arising in the trial of any issue of fact; and, in committing the cause to the jury, shall direct them to find accordingly, and shall submit *319 all questions of fact to the jury...." Practice Book § 16-9.

[11]  In this case, the court improperly left the issue of duty to the determination of the jury by instructing the jury to review the contracts of the defendants and to determine what duties arose from these contracts in relation to the defendants. We hold that this instruction was improper and that it is reasonably probable that the jury was confused and misled by such an instruction. Our Supreme Court has held that it is the responsibility of the trial court correctly to adapt the law to the case in question and to provide sufficient guidance to the jury in order that it may reach a correct verdict based on a proper application of the law. See _Macy v. Lucas_, supra, 72 Conn.App. at 156, 804 A.2d 971. In this case, instructing the jury that it had the responsibility to read the contracts and determine what legal duty each defendant owed the plaintiff deprived the jury of the court's guidance. The determination of what duties existed was a question of law for the court and only after it had determined those duties and instructed the jury on them, should the jury have been given the opportunity to assess whether the defendants had breached those duties based on the facts of this particular case. See _Hernandez v. Cirmo_, supra, 67 Conn.App. at 568-69, 787 A.2d 657; see also General Statutes § 52-216; Practice Book § 16-9. Accordingly, we conclude that the court's **854 instructions in this regard were incomplete and, therefore, improper.

B

[12]  We next review the court's omission of an instruction on a theory of common-law negligence, as alleged by the plaintiff against Dibble Hollow, because the court concluded that the relationship between the condominium association and the owner of an individual condominium unit does not fall under the traditional analysis of a land possessor and an invitee. The plaintiff claims *320 that the court improperly failed to charge on a theory of common-law negligence, arguing that the common-law duty owed him by Dibble Hollow is the same as the traditional common-law duties owed by a possessor of land to an invitee. We agree.

[13] [14] [15] [16]  "In general, there is an ascending degree of duty owed by the possessor of land to persons on the land based on their entrant status, i.e., trespasser, licensee or invitee. _Corcoran v. Jacovino_, 161 Conn. 462, 465, 290 A.2d 225 (1971); see D. Wright, J. FitzGerald & W. Ankerman, Connecticut Law of Torts (3d Ed.) § 47, p. 109. A possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe. _Warren v. Stancliff_, 157 Conn. 216, 218, 251 A.2d 74 (1968). In addition, the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover. Id.; see generally D. Wright, J. FitzGerald & W. Ankerman, supra, § at 49." _Morin v. Bell Court Condominium Assn., Inc._, 223 Conn. 323, 327, 612 A.2d 1197 (1992). The duties owed an invitee by a possessor of land, however, do not normally extend to a licensee because the licensee

must take the property as he or she finds it. Id.

[17] [18] [19] [20] "Invitees fall into certain general categories. A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.... A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.... [General Statutes § 52-557a], which provides that [t]he standard of care owed to a social invitee shall be the same as the standard of care owed to a business invitee, in effect recognizes a third kind of invitee, namely, the social invitee. The distinction between one who is an invitee and one who is merely a licensee turns largely on whether the visitor has received an invitation, as *321 opposed to permission, from the possessor of land, to enter the land or remain on the land. Although an invitation itself does not establish the status of an invitee, it is essential to it. Mere permission, as distinguished from invitation, is sufficient to make the visitor a licensee but it does not make him an invitee." (Internal quotation marks omitted.) Kurti v. Becker, 54 Conn.App. 335, 338, 733 A.2d 916, cert. denied, 251 Conn. 909, 739 A.2d 1248 (1999).

[21] [22] [23] [24] In this case, much like a tenant in a driveway specifically allocated for his use, but controlled and maintained by the landlord or other land possessor, the plaintiff certainly had more than mere permission to be in his driveway. See Martinez v. Woodmar IV Condominium Homeowners Assn., Inc., 189 Ariz. 206, 208-209, 941 P.2d 218 (1997) (association, much like landlord, has duty to maintain common areas under its control and to keep them in safe condition for protection of unit owners and their guests); Sacker v. Perry Realty Services, Inc., 217 Ga.App. 300, 457 S.E.2d 208 (1995) (condominium owner was invitee, not licensee, because of clear mutuality of obligations and interests **855 between owner and association), cert. denied, 1995 Ga. Lexis 914 (July 14, 1995); White v. Cox, 17 Cal.App.3d 824, 828, 95 Cal.Rptr. 259 (1971) (because unincorporated association is separate legal entity, member- unit-owner can maintain negligence action for injury sustained on common area). Properly, a "[c]ondominium association may ... be held to [a] landlord's standard of care as to common areas under its control." Annot., 45 A.L.R.3d 125 (Sup. June, 2002); see 15A Am.Jur.2d 823, Condominiums and Cooperative Apartments § 58 (2000). "Generally, [condominium] associations with the status of a legal entity are considered subject to civil liability...." Annot., 45 A.L.R.3d 1171, 1174 (1972). "In an action to recover for injuries allegedly suffered because of the condition of common areas of *322 a condominium it has been held that a condominium association may be sued for negligence in its common name." Id.; see 15A Am.Jur.2d 822, supra, § at 57. An individual unit owner who is a member of the association may also maintain a negligence action against the association for negligent maintenance of its common areas. 45 A.L.R.3d, supra, at 1174-75; 15A Am.Jur.2d 822, supra.

General Statutes § 47-200 et seq., the Common Interest Ownership Act, pursuant to which Dibble Hollow was created, provides, in part, that a common interest condominium community is a legal entity in which an individual unit owner owns a particular unit in the development and that the undivided interests in the common elements are vested in the unit owners. See General Statutes § 47-202(8). General Statutes § 47-249 provides in relevant part: "(a) Except to the extent provided by the declaration, subsection (b) of this section or subsection (h) of section 47-255, the association is responsible for maintenance, repair and replacement of the common elements...." General Statutes § 47-253 provides in relevant part: "(a) A unit owner is not liable, solely by reason of being a unit owner, for injury or damage arising out of the condition or use of the common elements .... (b) An action alleging a wrong done by the association, including an action arising out of the condition or use of the common elements, may be maintained against the association and not against any unit owner...."

The courts of several other states have analogized a unit owner's relationship with a condominium association as being akin to a tenant's relationship to a landlord with regard to the common areas, and that such a relationship involves the same duty of care as that owed to an invitee. See annot., 45 A.L.R.3d 1171 ("[c]ondominium association may properly be held to landlord's standard of care as to common areas under its control"); *323 15A Am.Jur.2d 823, supra, § at 58 (same); Martinez v. Woodmar IV Condominium Homeowners Assn., Inc., supra, 189 Ariz. at 208-209, 941 P.2d 218; O'Connor v. Village Green Owners Assn., 33 Cal.3d 790, 191 Cal.Rptr. 320, 662 P.2d 427 (1983);

*White v. Cox, supra,* 17 Cal.App.3d at 828, 95 Cal.Rptr. 259; *Sacker v. Perry Realty Services, Inc., supra,* 217 Ga.App. at 300, 457 S.E.2d 208; *Pratt v. Maryland Farms Condominium Phase 1, Inc.,* 42 Md.App. 632, 402 A.2d 105 (1979). We find nothing in our statutes, case law or Dibble Hollow's public offering statement that contravenes this reasoning. Rather, they, in addition to other frequently cited legal authorities, support it.

[25] Additionally, annot., 59 A.L.R.4th 489, 492 (1988), which concerns the liability of a condominium association for third party criminal attacks, provides a basic overview of when a landlord's duty is imposed properly on an association: "In determining whether to impose a landlord's duty of care on a condominium owners association, regarding its members and their guests, **856 courts may consider whether the association conducts itself as would a landlord in the traditional landlord-tenant relationship, performing such business functions as maintaining and repairing common areas, providing security, obtaining insurance, and managing the property, generally."

In this case, Dibble Hollow was a nonstock corporation, a separate legal entity, that assumed the responsibility of maintaining, repairing and replacing all of the common elements, including designated parking places and driveways. The president of Dibble Hollow at the time of the plaintiff's fall, Linda Colo, specifically testified at trial that Dibble Hollow was responsible for the maintenance of the driveways, regardless of whether they are considered common elements or limited common elements and that this maintenance includes snow removal, sanding and salting of the driveways. She further testified that the individual owners were under no *324 obligation to maintain their driveways and that such an undertaking would be discouraged by her as the president of Dibble Hollow. Such an undertaking, by a separate legal entity, is consistent with the traditional landlord-tenant relationship.

Although we agree with the court that, at the time of trial, there existed no Connecticut appellate authority concerning the status of a condominium association in relation to a unit owner, construing the previously mentioned undisputed evidentiary facts in combination with our statutes, case law and other relevant legal authority, we conclude that the court should have included in its charge to the jury the plaintiff's claim of common-law negligence.

II

[26] Each of the defendants argues, assuming arguendo, that the court improperly instructed the jury, that the jury's conclusion, as shown by its answers to the interrogatories, that the plaintiff was more than 50 percent contributorily negligent, makes any alleged improper instruction harmless. We do not agree.

Essentially, the defendants argue that because the finding of contributory negligence exceeding 50 percent of the total causal negligence is a bar to recovery under the provisions of the comparative negligence statute, General Statutes § 52-572h (b), any claimed error is irrelevant in light of that finding.

We conclude that the logical process in which the jury had to engage to determine the respective causal negligence of each of the parties to the case was intertwined with the need to hear a complete and accurate instruction from the court about the duties owed by Dibble Hollow and the other defendants to the plaintiff, as well as a complete and accurate instruction on each properly pleaded theory of negligence. The two are not *325 severable. Put another way, for the jury to make its determinations as to comparative negligence and whether the plaintiff's own causal negligence exceeded 50 percent of the total causal negligence, it needed a proper instruction as to the legal duty of all of the defendants to the plaintiff on each properly pleaded theory of negligence before it could determine that the defendants had not negligently breached any duties owed to the plaintiff. [FN6]

> FN6. We note that neither defendant argues that this is a general verdict. We agree. Additionally, because there were interrogatories in this case, the jury's decision-making path is evident.

In this case, the court failed to charge on common-law negligence that was pleaded and failed to define the duties owed by **857 the defendants to the plaintiff. Merely telling the jury to read the contracts and to determine, for itself, what duties were owed to the plaintiff deprived it of the proper guidance on a question of law necessary to guide it to a correct verdict. In the absence of any charge as to the defendants' duties to the plaintiff, the jury could not properly assess the comparative responsibility of all parties.

There were two sets of answers to interrogatories that the court provided to the jury, which are pertinent here. In the first set, consisting of the first, third and fifth interrogatories and answers, the jury found that the defendants were not negligent. This finding is certainly tainted by the court's failure to define the legal duties owed by the three defendants to the plaintiff and by its failure to charge on common-law negligence, which was pleaded and on which there was evidence. The answer to another interrogatory found the plaintiff more the 50 percent responsible for his own injuries.

General Statutes § 52-572h (b) provides in relevant part that contributory negligence shall not bar recovery if the "negligence was not greater than the combined *326 negligence of the person or persons against whom recovery is sought...." Judge Wright's treatise on jury instructions suggests the following comparative negligence charge language: "The first part concerns what is called in the law a complete bar to recovery. If we combine every act and omission of every party to the action [that] caused the injury, we have all, or 100% of the negligence involved. If the person seeking recovery for that injury is more than 50% to blame (negligent) for that injury, he cannot recover any damages from any of the other participants in the accident. His recovery is barred." 1 D. Wright & W. Ankerman, Connecticut Jury Instructions (Civil) (4th Ed.1993) § 193, pp. 362-63.

For the jurors to be properly charged, they needed to know about all negligent breaches of duty pleaded against the defendants on which there is evidence. In that sense, since they needed to evaluate the total causative negligence of the plaintiff and all defendants, error in the charge that taints the finding concerning the defendant's negligence taints the entire finding of negligence. If the jury concluded, solely on the basis of an improper charge, that none of the defendants owed a duty to the plaintiff, then it would be impossible for the jury accurately to assess the total causal negligence of the parties.

[27] [28] "When the legislature first enacted § 52-572h, abrogating the absolute bar of contributory negligence in favor of the doctrine of comparative negligence, that statutory abrogation applied only to injury to persons or damage to property arising out of the ownership, maintenance or use of a private passenger motor vehicle.... Public Acts 1972, No. 273, § 6. In 1973, the legislature broadened the comparative negligence doctrine to include negligence claims outside of the automobile no-fault system.... Public Acts 1973, No. 73-622, § 1." (Internal quotation marks omitted.) *327 Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 583, 657 A.2d 212 (1995). "The purpose of comparative negligence is to ameliorate the harshness of the complete bar to liability resulting from the common law defense of contributory negligence. W. Prosser, Torts (4th Ed.1971) § 67. This change in policy was accomplished by mandating a *comparison* by the fact finder of the relative degrees of negligence of the plaintiff and the defendant. [Section] 52-572h (b) provides that contributory negligence shall not bar recovery in an action by any person ... to recover damages resulting from personal injury [or damage to property] ... if the negligence was not greater than **858 the combined negligence of the person or persons against whom recovery is sought.... The purpose of the comparative negligence statute was to replace the former rule, under which contributory negligence acted as a complete defense, with a rule under which contributory negligence would operate merely to diminish recovery of damages based upon the degree of the plaintiff's own negligence." (Emphasis added; internal quotation marks omitted.) Williams Ford, Inc. v. Hartford Courant Co., supra, at 585-86, 657 A.2d 212.

[29] [30] Were this case subject to our former rule of contributory negligence as a total bar to recovery rather than the comparative negligence statute, the defendants' argument would make some logical sense, and the jury's finding that the plaintiff bore some responsibility for his injuries would limit our inquiry. [FN7] The same analysis does not hold true under the doctrine of comparative negligence because the jury must "compare" the total negligence of the parties. See id. If the jurors are not even charged as to whether the defendants had a duty or were negligent on one

of the theories properly pleaded in the complaint, they cannot accurately compare the negligence of the parties. In this case, the *328 court, rather than define for the jury the duties of each defendant in relation to the plaintiff as our law clearly necessitates, [FN8] in essence, instructed the jury to read the contracts itself and to determine each defendant's duty. The determination of whether a duty exists is a question of law, but whether such a duty is breached is a question of fact. See *Hernandez v. Cirmo*, supra, 67 Conn.App. at 568-69, 787 A.2d 657 2 Restatement (Second), Torts, § 328B, p. 151 (1965), and comments thereto. The court also omitted any charge on the specifications of the plaintiff's common-law theory of negligence, which was a clear theory of recovery pleaded in the plaintiff's complaint. A plaintiff is entitled to an instruction on any theory properly raised in his or her complaint and reasonably supported by the evidence. See *Goodmaster v. Houser*, 225 Conn. 637, 648, 625 A.2d 1366 (1993) ("court should ... submit to the jury all 'issues as outlined by the pleadings and as reasonably supported by the evidence' "). Both of these omissions made it impossible to have an error-free path to the jury's verdict notwithstanding the interrogatory answer as to the plaintiff's negligence and the separate interrogatory as to the defendants' negligence.

FN7. This is so because under our former rule, a plaintiff was completely barred from recovery if his negligence materially contributed to producing the resulting accident even if it were concurrent with the negligence of one or more defendants. *Seabridge v. Poli*, 98 Conn. 297, 304, 119 A. 214 (1922).

FN8. See *Hernandez v. Cirmo*, supra, 67 Conn.App. at 568-69, 787 A.2d 657; 2 Restatement (Second), Torts, § 328B, p. 151 (1965), and comments thereto.

"[T]he trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict." (Internal quotation marks omitted.) *Macy v. Lucas*, supra, 72 Conn.App. at 156, 804 A.2d 971. In this case, because the court failed to properly charge the jury, the jury was not presented with this case in such a way that injustice was not done to either party under the established rules of law. See id.
The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.
Conn.App.,2003.
Sevigny v. Dibble Hollow Condominium Ass'n, Inc.
819 A.2d 844, 76 Conn.App. 306
END OF DOCUMENT

West Reporter Image (PDF)

Copr. (C) West 2004 No Claim to Orig. U.S. Govt. Works