Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.
Douglas SPINGOLA,
v.
WHITEWATER MOUNTAIN RESORTS OF CONNECTICUT, INC. d/b/a Powder Ridge Ski Area et al.
No. CV010094538S.
Dec. 10, 2002.

Averum Sprecher, Middletown, for Douglas Spingola.
Howd & Ludorf, Hartford, for White Water Mountain Resorts of Connecticut, Inc. and White Water Mountain Resorts, Inc.

RICHARD A. ROBINSON, J.

*1 The instant action was brought in a two Count Amended Complaint. The Plaintiff Douglas Spingola (hereinafter "Spingola") alleges that the Defendant White Water Mountain Resorts of Connecticut, Inc. (hereinafter "Whitewater") is a corporation duly organized and existing under the laws of the state of Connecticut and doing business as Powder Ridge Ski Area in Middlefield, Middlesex County, Connecticut.

The Plaintiff further alleges that on February 27, 1999, he and his family went to Powder Ridge Ski Area to go snow tubing. When he finished snow tubing he used a walkway from the tubing area when he was caused to slide and fall and become injured.

The Plaintiff alleges that at the time that he was injured, he was an invitee on the Defendants' premises.

On April 4, 2002, the Defendants filed a Motion for Summary Judgment. The Defendants assert that at the time that the Plaintiff was injured he was not an "invitee" but a "licensee." The Defendants further assert that even assuming that the Plaintiff enjoyed the status of an invitee, there is no evidence that a defect existed and/or that the Defendants had actual or constructive notice of the same for such a period of time that they could have corrected it.

Before addressing the merits of Defendants' motion, a brief review of the standards for the granting of a Motion for Summary Judgment is warranted:

"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ... In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party ...

"A material fact is a fact that will make a difference in the outcome of the case ... Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue ... It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact ... are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court ..." (Citations omitted; internal quotation marks omitted.) *Yancey v. Connecticut Life & Casualty Ins. Co.,* 68 Conn.App. 556, 558-59, 791 A.2d 719 (2002).

*Christian v. Gouldin,* 72 Conn.App. 14, 18 (2002).

Section 17-45 of the Connecticut Practice Book concerns the proceedings for motions for summary judgment. It provides that:

A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. The motion shall be placed on the short calendar to be held not less than fifteen days following the filing of the motion and the supporting materials, unless the judicial authority otherwise directs. The adverse party [prior to the day the case is set down for short

calendar] shall at least five days before the date the motion is to be considered on the short calendar file opposing affidavits and other available documentary evidence. Affidavits, and other documentary proof not already a part of the file, shall be filed and served as are pleadings.

*2 The Plaintiff alleges in his Complaint that at the time that he was injured he was a business invitee of the Defendants and as such they owed him a duty of care.

The law in our state is well settled as to the duty owed by a property owner when an individual enters upon their land as an invitee:

"Invitees fall into certain general categories. A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public ... A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealing with the possessor of land ... General Statutes § 52-557a, which provides that [t]he standard of care owed to a social invitee shall be the same as the standard of care owed to a business invitee, in effect recognizes a third kind of invitee, namely, the social invitee. The distinction between one who is an invitee and one who is merely a licensee turns largely on whether the visitor has received an invitation, as opposed to permission, from the possessor of land, to enter the land or remain on the land. Although an invitation itself does not establish the status of an invitee, it is essential to it. Mere permission, as distinguished from invitation, is sufficient to make the visitor a licensee but it does not make him an invitee." (Citations omitted; internal quotation marks omitted). *Corcoran v. Jacovino,* 161 Conn. 462, 465-66, 290 A.2d 225 (1971).

*Kurti v. Becker,* 54 Conn.App. 335, 338 (1999).

Plaintiff in his complaint specifically pleads that he is a business invitee.

Typically, "[f]or the plaintiff to recover for the breach of a duty owed to her as a business invitee, she ha[s] to allege and prove that the defendant had actual or constructive notice of the presence of the specific unsafe condition that caused her [injury] ... Either type of notice must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it ... If the plaintiff, however, alleges an affirmative act of negligence, i.e., that the defendant's conduct created the unsafe condition, proof of notice is not necessary." (Citations omitted)

*Meek v. Wal-Mart Stores, Inc.,* 72 Conn.App. 467, 474 (2002).

[A] defendant owe[s] the plaintiff the duty to maintain its premises in a reasonably safe condition. *Gulycz v. Stop & Shop Cos.,* 29 Conn.App. 519, 521, 615 A.2d 1087, cert. denied, 224 Conn. 923, 618 A.2d 527 (1992). To hold the defendant liable for her personal injuries, the plaintiff must prove (1) the existence of a defect, (2) that the defendant knew or in the exercise of reasonable care should have known about the defect and (3) that such defect had "existed for such a length of time that the [defendant] should, in the exercise of reasonable care, have discovered it in time to remedy it." *Cruz v. Drezek,* 175 Conn. 230, 238-39, 397 A.2d 1335 (1978).

*3 *Martin v. Stop & Shop Supermarket Cos.,* 70 Conn.App. 250, 251 (2002).

The Defendants, in their Motion for Summary Judgment assert that the Plaintiff was not a business invitee, but a licensee.

"In general, there is an ascending degree of duty owed by the possessor of land to persons on the land based on their entrant status, i.e., trespasser, licensee or invitee." ... [I]n premises liability actions, the standard of care depends on the status of the visitor once the ownership status is determined.

*Monterose v. Cross,* 60 Conn.App. 655, 663 (2000).

Whereas the Defendants assert that the Plaintiff was a licensee, a discussion of a property owner's duty to a licensee is warranted.

"A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission." (Internal quotation marks omitted.) *Laube v. Stevenson,* 137 Conn. 469, 473, 78 A.2d 693 (1951). The duty that a landowner "owes to a licensee ... does not ordinarily encompass the responsibility to keep the property in a reasonably safe condition, because the licensee must take the premises as he [or she] finds them ... If the licensor actually or constructively knows of the licensee's presence on the premises, however, the licensor must use reasonable care both to refrain from actively subjecting him [or her] to danger and to warn him [or her] of dangerous conditions which the possessor knows of but which he [or she] cannot reasonably assume that the licensee knows of or by reasonable use of his [or her] faculties would observe." (Citations omitted; internal quotation marks omitted.) *Morin v. Bell Court*

*Condominium Assn., Inc., supra,* 223 Conn. at 327-29.
Salaman v. City of Waterbury, 246 Conn. 298, 305 (1998).
The Plaintiff asserts that he was invited to the subject premises. In support of his Objection to the Motion for Summary Judgment the Plaintiff submitted excerpts of his deposition that was taken on January 31, 2002. The excerpts provide in pertinent part as follows:
A. I had heard an advertisement on the radio several times promoting the snow tubing.
B. Do you recall what the substance of the advertisement was?
C. Well, it was a family tubing fun. I heard it several times on the radio, bring your family to Powder Ridge for snow tubing activities, great family thing, fun thing to do.
(See deposition at page 14.)
It is the Plaintiff's contention that the aforementioned advertisement was an invitation for him to enter upon the Defendants' property for the purposes of snow tubing, which is what he alleges to have done and therefore he is a business invitee. However, the Defendants assert that Powder Ridge charges a fee and requires customers to sign a waiver and release form in exchange for the benefit of using its snow park, lift and tubes. (See Defendant's Exhibit B, Affidavit of Chad Johnson at paragraph 5.)
It is undisputed that the Plaintiff did not purchase any tickets or sign any waiver and release forms upon entering the park. Instead, he received tickets from an unidentified woman, who gave him her tickets without receiving any compensation. (See Memorandum in Support of Motion for Summary Judgment at Page 2, and Defendants' Exhibit A, Page 20, lines 12-22, inclusive.)
*4 The Defendants assert that while the Plaintiff may have been an invitee when he arrived on their premises, since he did not follow their procedures of purchasing a ticket and signing the waiver and release forms before entering into the snow tubing park he was not an invitee, but at best a licensee in that area of their premises.
[A]n invitee who exceeds the limits of his invitation loses his status as an invitee ...
Frankovitch v. Burton, 185 Conn. 14, 21 (1981).
The Defendants assert that the tickets that were given to the Plaintiff by the unidentified are not transferable. Exhibit "B" the Defendants' Reply Memorandum in Support of the Motion for Summary Judgments is a copy of a Powder Ridge ticket that the Defendants purport to be similar to the tickets that the unidentified woman gave to the Plaintiff. The copy of the ticket provides in pertinent part that it is "NOT TRANSFERABLE." It also states that it is "NON REFUNDABLE" and contains a price, date, time of expiration and language concerning the bearer's assumption of risk.
The Plaintiff asserts that Connecticut has adopted the modern view of antiassignment provisions in contracts:
Our analysis of the effect of the antiassignment provision begins by emphasizing that the modern approach to contracts rejects traditional common-law restrictions on the alienability of contract rights in favor of free assignability of contracts. See 3 Restatement (Second), Contracts § 317, p. 15 (1981) ("[a] contractual right can be assigned"); J. Murray, Jr., Contracts (3d Ed.1990) ("the modern view is that contract rights should be freely assignable"); 3 E. Farnsworth, Contracts (2d Ed.1998) § 11.2, p. 61 ("[t]oday most contract rights are freely transferable"). Common-law restrictions on assignment were abandoned when courts recognized the necessity of permitting the transfer of contract rights. "The force[s] of human convenience and business practice [were] too strong for the common-law doctrine that [intangible contract rights] are not assignable." (Internal quotation marks omitted.) J. Murray, Jr., *supra,* § 135, p. 791. "If the law were otherwise, our modern credit economy could not exist." 3 E. Farnsworth, *supra,* § 11.2, p. 61. As a result, an assignor typically can transfer his contractual right to receive future payments to an assignee. See Western United Life Assurance Co. v. Hayden, 64 F.3d 833, 841 (3d Cir.1995); 3 E. Farnsworth, *supra,* § 11.2, pp. 61, 66.
The parties to a contract can include express language to limit assignment and courts generally uphold these contractual antiassignment clauses. See 3 Restatement (Second), *supra,* § 317, p. 15 ("[a] contractual right can be assigned unless ... assignment is validly precluded by contract"); 3 E. Farnsworth, *supra,* § 11.4, pp. 82 ("most courts have upheld [terms prohibiting assignment] as precluding effective assignment"). Given the importance of free assignability, however, antiassignment clauses are construed narrowly whenever possible. See 3 E. Farnsworth, *supra,* § 11.4, pp. 82-83.
*5 In interpreting antiassignment clauses, the majority of jurisdictions now distinguish between the assignor's "right" to assign and the "power" to assign (modern approach).

02/26/04 15:03 FAX 2033306762　　THE HAYMOND LAW FIRM　　⌀005
Case 3:02-cv-01016-CFD　Document 30-6　Filed 04/07/2004　Page 4 of 5

2002 WL 31894720

*Rumbin v. Utica Mutual Ins.*, 254 Conn. 259, 267 (2000).
The Court reasoned that:
The modern approach thus serves the dual objectives of free assignability of contracts together with full compensation for any actual damages that might result from an assignment made in breach of an antiassignment provision.
*Rumbin, Id.* at 278.
It is clear that the Courts of this state have adopted the modern approach to antiassignment of contracts, an approach that includes the power to contract away prohibitions against assignment. The modern approach, however, is not adopted by some courts, which uphold antiassignment clauses regardless of whether the parties have included contractual language that expressly limits the power to assign or expressly invalidates the assignment itself. We agree with these courts that contracting parties can exercise their freedom to contract to overcome free alienability when they include the appropriate contractual language.
*Rumbin, Id.* at 272.
Although *Rumbin* concerned annuity contracts, its dicta indicates that the issues concerning antiassignment provisions are applicable to all contracts.
The antiassignment provision in the instant action provides that the Powder Ridge ticket is not transferable. This limited the unidentified woman's right to transfer the ticket to the Plaintiff, but not her power to do so. The ticket does not contain any express language to limit the power to assign or to void the assignment itself.
The Defendant's argument concerning the Plaintiff's entrant status was based on the issue concerning the transfer of the ticket and this Court's holding on the Plaintiff's entrant status is limited to said issue. While the Court does come to the conclusion that the transfer of the ticket does not convert the Plaintiff's entrant status from a invitee to a licensee, its holding is narrow as to this issue alone. In light of the foregoing, there is a genuine issue of material fact as to what the Plaintiff's entrant status was at the time of the incident in question.
The Defendants further assert that even assuming that the Plaintiff enjoyed the status of an invitee, there is no evidence that a defendant existed, and/or that the Defendants had actual or constructive notice of same for such a period of time what they could have corrected it.
The Plaintiff filed an affidavit in support of his Objection to the Motion for Summary Judgment. It provides in pertinent part that:
16. That, when we finished tubing we gathered up our tubes and placed them at a return area, and then followed a neon-like rope which lead toward the bottom of the hill on a path of packed-like snow. This path cumulated in a downward sloping ramp with a grade of about 20 degrees-30 degrees; this ramp had a dark, carpet-like material covering it, was constructed of a hard material under the carpet, and was about ten (10) to fifteen (15) feed in length. This ramp did not have a solidly fixed side railing(s), and in, contrast to the artificial illumination on the hill where the actual tubing activity took place, the lighting at the ramp was very dim ...
*6 20 ... I had not been able to tell whether the carpet was wet before I stepped onto it and started sliding, I could now tell it was wet and "slick." I could not see or feel any sand or any abrasive material on this carpet-like covering even while sitting right down on it.
21. That a couple of men who appeared to be Whitewater employees, because they were putting snow tubes into a large container located at that site, finally came over and helped me move to a nearby wooden box.
22. That, at that point I noticed a fifty-five (55) gallon drum containing sand. The drum had an opening in to put a shovel in to get sand out, was within the immediate proximity of the bottom of the ramp where I was injured.
Whereas the Defendants in this matter are seeking Summary Judgment, they have the burden of proving that there are no genuine issues of material fact.
... Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ... In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party ... The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law ... and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact.

(Citations omitted; internal quotation marks omitted.) *Kronberg v. Peacock,* 67 Conn.App. 668, 671, 789 A.2d 510, cert. denied, 260 Conn. 902, 793 A.2d 1089 (2002).
*Billerback v. Cerminara,* 72 Conn.App. 302, 305 (2002).

The Plaintiff's affidavit shows that there are genuine issue of material fact as to whether the Defendants knew or "should" have known about the alleged condition of the ramp in question. The Plaintiff's affidavit indicates that the subject ramp was a highly traveled source of egress from the snow tubing area. The Defendants had placed sand containers near the site of the alleged accident, but allegedly had not placed any sand on the ramp. The lighting of the ramp was allegedly dimmer than the surrounding area.

The Defendants have failed to meet their burden of proving that there are not any genuine issues of material fact remaining, the Motion for Summary Judgment is therefore denied.

For all of the reasons cited herein, the Defendants' Motion for Summary Judgment is denied.

Conn.Super.,2002.
Spingola v. Whitewater Mountain Resorts of Connecticut, Inc.
2002 WL 31894720 (Conn.Super.)
END OF DOCUMENT

Copr. (C) West 2004 No Claim to Orig. U.S. Govt. Works